## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MOUNT ST. SCHOLASTICA, INC., )
)
       **Plaintiff,** )
)
**v.** )
)     **No. 06-2208–CM**
)
CITY OF ATCHISON, KANSAS, )
)
       **Defendant.** )
_____)

## MEMORANDUM AND ORDER

Plaintiff Mount St. Scholastica, Inc., brings this case against defendant City of Atchison, Kansas, alleging that by unreasonably denying a demolition permit under the Kansas Historic Preservation Act, defendant violated plaintiff's state and federal constitutional rights.  This case is before the court on Defendant's Motion for Judgment on the Pleadings (Doc. 8) and Plaintiff's Cross Motion for Summary Judgment (Doc. 10).  Because the court finds that defendant's actions violated plaintiff's First Amendment rights, the court grants summary judgment for plaintiff in part.

### I.    Factual Background

Mount St. Scholastica is a monastic community that owns property in Atchison, Kansas.  Part of plaintiff's religious philosophy requires that such property and other holdings be "administer[ed] . . . justly so that [plaintiff] will be able to witness publicly to the evangelical poverty each member has promised in her commitment to monastic life."  Among plaintiff's property and holdings is the Administration Building.

The Administration Building was built in 1924 and has served multiple purposes over its lengthy history.  It has served as classrooms and housed administration programs for the Mount

Academy, Junior College, the Mount St. Scholastica College, and the Mount Community Center.  As plaintiff's educational efforts changed and relocated, it became difficult for plaintiff to utilize the Administration Building.  According to plaintiff, "since 1989, the Benedictine Community at Mount St. Scholastica has pursued trying to find a feasible and prudent use for the Administration Building."  It is uncontested that the building has not been used for a full year since 2001.

On October 18, 2005, plaintiff applied to defendant for a demolition permit for the Administration Building.  Because the Administration Building is located within 500 feet of buildings which are listed as historic properties—in fact the Administration Building is physically connected to the St. Cecilia structure—defendant submitted the request for a demolition permit to the State Historic Preservation Officer under Kan. Stat. Ann.§ 75-2724.  The State Historic Preservation Officer responded on November 22, 2005, with a determination that the Administration Building "is a character-defining feature of the environs and therefore its demolition would encroach upon, damage or destroy listed historic properties or their environs."  As an alternative to demolition, the State Historic Preservation Officer suggested that plaintiff market the property for redevelopment or mothball the building "until a new use can be found."

Under the Kansas Historic Preservation Act, a governing body may override the recommendation of the State Historic Preservation Officer if it finds "based on a consideration of all relevant factors, that there is no feasible and prudent alternative to the proposal and that the program includes all possible planning to minimize harm to [the] historic property."  Kan. Stat. Ann. § 75-2724(a).  Accordingly, on December 5, 2005, plaintiff presented its request for a demolition permit to defendant at a City Commission Meeting.  Defendant requested, and plaintiff agreed, that additional time would be useful to research and find a use for the Administration Building.

-2-

Defendant postponed its decision until a later City Commission Meeting.

On April 3, 2006, defendant held the second City Commission Meeting on this matter. The submitted record indicates that, at this hearing, defendant heard presentations from the Kansas State Historical Society, the Atchison Preservation Alliance, the Foutch Brothers, LLC, as well as plaintiff. The Kansas State Historical Society opposed the demolition and considered it a "clear-cut case." The Atchison Preservation Alliance provided guidelines for mothballing buildings and addressed its costs. Steve Foutch proposed to convert the building into elderly housing. Plaintiff rejected the housing proposal because it refused to "sell land in the middle of their property," and rejected the mothballing proposal because it would "say that the Community is standing still" and "would have a great detrimental effect on recruiting new members." Defendant then opened the meeting to public comments. At least seventeen individuals offered their opinions. Numerous individuals addressed plaintiff's unique circumstances. Three of the city commissioners found that a feasible and prudent alternative existed. Two members of the city commission found that a feasible and prudent alternative did not exist. Based on this finding, defendant denied plaintiff's request for a demolition permit.

Plaintiff requested that defendant reconsider this determination. While this request was on an agenda for a later City Commission Meeting, due to parliamentary procedures, defendant did not discuss the request for reconsideration. Plaintiff then filed the present case in state court on May 2, 2006. Plaintiff's complaint contained five counts:

> Count I[,] Appeal pursuant to K.S.A. 60-2101(d)[;] Count II, Declaratory Judgment pursuant to K.S.A. 60-1701 *et seq.*[;] Count III[,] Civil Action for Deprivation of Rights pursuant to 42 U.S.C. § 1983 (First and Fourteenth Amendments)[;] Count IV[,] Civil Action for Deprivation of Rights pursuant to 42 U.S.C. § 1983 (Fifth and Fourteenth Amendments)[; and] Count V[,] Mandamus."

Defendant removed the case to this court on May 22, 2006.

## II.    Judgment Standards

While typically a motion for judgment on the pleadings is governed by the same standards as a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted—which would permit dismissal only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief—Fed. R. Civ. P. 12(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."  This notice may either be actual or constructive.  *See Robinson v. Medevac Midamerica, Inc.*, No. 06-4042-SAC, 2006 WL 2726794, at *2 (D. Kan. Sep. 22, 2006) (citing *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).  Moreover, "when both parties submit 'materials beyond the pleadings in support of or opposing a motion to dismiss, the prior action on the part of the parties puts them on notice that the judge may treat the motion as a Rule 56 motion.'"  *Caldwell v. W. Atlas Int'l*, 871 F. Supp. 1392, 1394–95 (D. Kan. 1994) (quoting *Wheeler v. Hurdman*, 825 F.2d 257, 260 (10th Cir. 1987)).

Defendant submitted a Motion for Judgment on the Pleadings (Doc. 8).  Plaintiff's response incorporated a Cross Motion for Summary Judgment (Doc. 10) without providing any separate discussion based on the different judgment standards between a motion for judgment on the pleadings and a motion for summary judgment.  Similarly, defendant combined its reply to the motion for judgment on the pleadings and its response to the cross motion for summary judgment into a single filing with no discussion of judgment standards.  Both parties submitted materials beyond the pleadings.  The court considers both motions under the standards of summary judgment.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Count I—Kan. Stat. Ann. § 60-2101(d)

The Kansas Historic Preservation Act provides that any person aggrieved by a determination by a governing body may appeal under Kan. Stat. Ann. § 60-2101. Kan. Stat. Ann. § 75-2724(b). Plaintiff alleges that the defendant acted unreasonably, arbitrarily, capriciously, and in a manner inconsistent with Kan. Stat. Ann. § 75-2724.[1] Plaintiff requests damages and expenses. Defendant argues that because its decision considered the relevant factors, plaintiff's claim must fail.

When reviewing a governing body's determination, a court is restricted to considering whether: "(1) the tribunal acted fraudulently, arbitrarily, or capriciously, (2) the administrative order is substantially supported by the evidence, and (3) the tribunal's action was within the scope of its authority." *Reiter v. City of Beloit*, 947 P.2d 425, 434 (Kan. 1997). As part of considering whether the decision was arbitrary or supported by the evidence, the court examines whether and how the governing body considered the relevant factors. *Id.* at 438 ("The ultimate question for appellate review is whether the governing body took a hard look at all relevant factors and, using plain common sense, based its determination upon the evidence."). A factor is relevant if it is "logically connected to the ultimate decision of whether there is a feasible and prudent alternative to the

---

[1] Plaintiff also argues that defendant violated plaintiff's state and federal constitutional rights and that Kan. Stat. Ann. § 75-2724 is unconstitutional. These arguments are addressed in separate claims.

-5-

proposal and whether the program includes all possible planning to minimize harm to the historical property at issue." *Id.* at 436–37.

In *Reiter*, the Kansas Supreme Court provided examples of relevant factors beyond prudent alternatives. These include factors that are considered in zoning-change decisions, such as neighborhood character, proximate property uses, the property's suitability for its restricted use, effect on proximate property, the property's duration of vacancy, public gains, personal hardships, professional recommendations, and relation of property to city planning. *Id.* The State Historic Preservation Officer's recommendation is also a relevant factor. *Id.* at 437.

Proposed alternatives are also relevant factors. A proposed alternative is a relevant factor if evidence shows it would be feasible and prudent; a proposed alternative without such evidence is not a relevant factor. *Id.* at 436. It is the project proponent's burden to show that there are no feasible and prudent relevant factors. *Id.* (citing *Lawrence Preservation Alliance, Inc. v. Allen Realty, Inc.*, 819 P.2d 138, 140 (Kan. Ct. App. 1992)). Forcing a landowner to sell the property is not an alternative under Kan. Stat. Ann. § 75-2724. *Allen Realty, Inc. v. City of Lawrence*, 790 P.2d 948, 957 (Kan. Ct. App. 1990).

Here, plaintiff claims that defendant failed to consider all of the relevant factors and relied on unsupported proposed alternatives. The proposed alternatives discussed at the City Commission Meeting were (1) selling the property for an alternative use and (2) mothballing the building until a new use is found. Plaintiff stresses that the record is unclear on which alternative defendant relied and that neither alternative is feasible and prudent. Plaintiff also believes defendant failed to consider plaintiff's unique mission. Defendant responds that because its decision was based on relevant and substantial evidence, its decision was not arbitrary and capricious.

While plaintiff is correct that a forced sale is not a relevant alternative, defendant's decision

was supported by the evidence and not fraudulent, arbitrary, or capricious.  The minutes of the City Commission Meeting on April 3, 2006, reveal that defendant appreciated the significance of its decision and considered the relevant factors.  At the hearing, defendant heard presentations from the Kansas State Historical Society, the Atchison Preservation Alliance, as well as plaintiff.  The minutes show that defendant asked engaging questions during these presentations.  The Kansas State Historical Society opposed the demolition and considered it a "clear-cut case."  The Atchison Preservation Alliance provided guidelines for mothballing buildings and addressed its costs.  Defendant then opened the meeting to public comments.  Many individuals offered their opinions, which were considered in defendant's decision and addressed plaintiff's unique circumstances.  Three of the city commissioners found that a feasible and prudent alternative existed.  Two members of the city commission disagreed, finding no feasible and prudent alternative.

Plaintiff has not met its burden of showing that there are no feasible and prudent alternatives.  It appears that several of the city commissioners considered mothballing to be a feasible and prudent alternative.  There was sufficient evidence to support this conclusion, including: the provided guidelines for mothballing buildings, the State Historical Preservation Officer's recommendation, individuals volunteering to assist in the building's maintenance, and Commissioner Estes's report that several callers volunteered to contribute financially to maintain the building.  Although plaintiff raises strong arguments against mothballing the building, notably citing the Supreme Court of South Dakota's recent decision in *Korzan v. City of Mitchell*, 708 N.W.2d 683, 687 (S.D. 2006); that there is a valid opposing viewpoint does not make defendant's decision unreasonable.  Instead, the record indicates that defendant took the required hard look at relevant factors, and made its decision on the evidence.  Plaintiff's request for summary judgment on Count I is denied.  Defendant's request for summary judgment on Count I is granted.

**IV.      Count III—42 U.S.C. § 1983 related to the First and Fourteenth Amendment**s

Section 1983 protects parties from the deprivation of constitutional rights by persons acting under color of state law.  *See* 42 U.S.C. § 1983.  Under § 1983, a municipality is a person subject to liability.  *Dunn v. City of Newton*, No. 02-1346-WEB, 2003 WL 22462519, at *7 (D. Kan. Oct. 23, 2003) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)).  Here, plaintiff alleges that defendant deprived it of rights protected by the First and Fourteenth Amendment.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  By incorporation into the Fourteenth Amendment, this applies to state governments.  *Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 876–77 (1990).  While the Free Exercise Clause prohibits the regulation of religious beliefs, it does not exempt an individual from compliance with a "valid and neutral law of general applicability."  *Id.* at 877, 879.  As restated recently by the Tenth Circuit, "[n]eutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006).  If a law's object is not to infringe or restrict religious practices, the law is neutral.  *Id.* at 649–50.  However, if a law that is not neutral or generally applicable burdens a religious practice, it is subject to strict scrutiny.  *Id.* at 649.

Because the object of Kan. Stat. Ann. § 75-2724 is to protect historic property, and not to infringe or restrict religious practices, the statute is neutral.  *See Reiter*, 947 P.2d at 434 (citing Kan. Stat. Ann. § 75-2715 for the public policy and intent of the Kansas Historic Preservation Act).  It appears that the parties agree that plaintiff has a sincere religious belief requiring it to "administer [its] corporate holdings justly and prudently so that [it] will be able to witness publicly to the evangelical poverty each member has promised in her commitment to the monastic life."  Although

defendant disputes whether this forbids the sale of plaintiff's property to third parties, defendant does not challenge whether its actions otherwise burdened plaintiff's religious practices.  For the resolution of the present motions, the court accepts that defendant's actions have burdened plaintiff's religious practices without further analysis of this religious belief.  *See Smith*, 494 U.S. at 886–87 (considering it inappropriate "for judges to determine the 'centrality' of religious beliefs before applying a compelling interest test in the free exercise field").  With this assumption, the crux of the analysis becomes whether the statute is generally applicable.  Unfortunately, contradictory tests exist for determining if this statute is generally applicable.

One approach is to conclude that land use regulations—such as zoning ordinances, landmark laws, and historical preservation acts—are generally applicable if they are neutral.  In *Grace United Methodist Church*, the Tenth Circuit addressed this approach by noting:

> [S]everal federal courts have held that land use regulations . . . are neutral and generally applicable notwithstanding that they may have individualized procedures for obtaining special use permits or variances . . . .  According to these courts . . . [zoning laws] are generally applicable if they are motivated by secular purposes and impact equally all land owners in the city seeking variances.

451 F.3d at 651 (quotation omitted).  Thus, for some courts to determine whether a land use regulation is generally applicable, the test remains whether religious animus motivated the law.  *See, e.g.*, *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 472 (8th Cir. 1991) ("Absent evidence of the City's intent to regulate religious worship, the ordinance is properly viewed as a neutral law of general applicability . . . ."); *Rector, Wardens and Members of Vestry of St. Bartholomew's Church v. City of New York*, 914 F.2d 348, 354 (2d Cir. 1990) ("The critical distinction is thus between a neutral, generally applicable law that happens to bear on religiously motivated action, and a regulation that restricts certain conduct because it is religiously oriented."); *C.L.U.B. v. City of Chicago*, 157 F. Supp. 2d 903, 915 (N.D. Ill. 2001), *aff'd*, 342 F.3d 752 (2d Cir.

2003) ("[T]he Zoning Ordinance is generally applicable since it does not 'impose burdens only on conduct motivated by religious belief' . . . .").

The second test for whether a statute is generally applicable evolves from the Supreme Court's *Smith* decision.[2] The test, as stated by the Tenth Circuit, is: "[I]n circumstances in which individualized exemptions from a general requirement are available, the government may not refuse to extend that system to cases of religious hardship without compelling reason." *Axson-Flynn v. Johnson*, 356 F.3d 1277, 1297 (10th Cir. 2004). Because exemptions are provided for secular reasons, religious reasons "carry an additional and unnecessary burden." Thus, the regulation is not neutral or generally applicable. *See Castle Hills First Baptist Church v. City of Castle Hills*, No. SA-01-CA-1149-RF, 2004 WL 546792, at *14 (W.D. Tex. Mar. 17, 2004); *Grace United Methodist Church*, 451 F.3d at 650.

The Tenth Circuit has limited the "exemption exception" to "systems that are designed to make case-by-case determinations." *Axson-Flynn*, 356 F.3d at 1298. Exemptions for "objectively defined categories of persons" do not satisfy the exceptions test. *Id.* The distinction is drawn on whether the application of the exemption requires subjective consideration of individual circumstances. *Grace United Methodist Church*, 451 F.3d at 650–51.

To determine whether the Kansas Historic Preservation Act is neutral and generally applicable, this court must also consider the state court decisions construing the act. *See Zabrinas v. McKune*, No. Civ. A. 02-3140-GTV, 2003 WL 23101780, at *3 (D. Kan. Dec. 23, 2003) ("In evaluating the facial constitutionality of a state statute, a federal court is bound by the constructions

---

[2] Some courts divide the tests for general applicability and whether there is a system of individualized exemptions. The Tenth Circuit does not follow this approach: "[a]s long as a law remains exemptionless, it is considered generally applicable . . . ." *Grace United Methodist*, 451 F.3d at 650.

-10-

placed on that statute by state court decisions." (quoting *Ferguson v. Estelle*, 718 F.2d 730, 733 n.5 (5th Cir. 1983))).  Although the Kansas Supreme Court has reviewed the act relatively few times, its view of whether the act is generally applicable is clear.

In *Reiter*, the Kansas Supreme Court examined whether the City properly granted a "change of zoning."  947 P.2d at 427.  In its review of the City's actions, the court discussed the duties of the governing body under the Kansas Historic Preservation Act.

> In summary, it is the duty of the governing body under K.S.A. 75-2724 to examine all of the relevant factors and determine whether there is a feasible and prudent alternative to the proposed action.  In making such a determination, the governing body may consider any relevant factors logically connected to the ultimate decision of whether there is a feasible and prudent alternative to the proposed project, including the information relied on by the [State Historic Preservation Officer].  The decision of the governing body must necessarily be made on a case-by-case basis, and the scrutiny used by the governing body will depend in large part on the nature of each individual action and the effect such action will have on the historic property or its environs.

*Id.* at 438–39.  Thus, the Kansas Historic Preservation Act requires a city to make case-by-case determinations; and the depth of review must also be individualized.

Defendant argues that, in spite of this state interpretation, the Kansas Historic Preservation Act should be considered generally applicable and does not provide for individualized exemptions. This argument rests on statements made by the Tenth Circuit in *Grace United Methodist* and other federal courts' consideration of zoning laws in the context of the Free Exercise Clause.  Comparing the *Grace United Methodist* holding to the present facts, defendant contends that "the City Commission received evidence from persons on both sides of the issue including certain individuals who proposed specific, viable alternatives to demolition.  Those alternatives in no manner implicate the [p]laintiff's free exercise rights because they do not constitute an exception that 'is any way based on categorization or discrimination.'"  This argument fails for two reasons.

First, this argument addresses neutrality instead of examining whether there is a system of individualized exemptions. Because the Tenth Circuit has defined such a system to be one where case-by-case determinations are routinely made and the Kansas Supreme Court requires case-by-case determinations in this context, defendant's argument does not challenge that the present facts are part of a system of individualized exemptions.

Second, the present situation is distinguishable from the facts of *Grace United Methodist* and more closely resembles facts that the Tenth Circuit suggested would be a system of individualized exemptions. While there is no evidence that the Kansas Historic Preservation Act was passed due to any religious animus or any strong evidence indicating that enforcement targeted religious groups—similar to the ordinance in *Grace United Methodist*—it is clear that the City in this case had the "authority or discretion" to permit the requested construction. *Grace United Methodist*, 451 F.3d at 653. This ability to grant or deny the requested construction based on subjective criteria is the key distinction. Because the decision was necessarily made on a case-by-case basis with individualized scrutiny, the facts of this case are similar to the distinctions hypothesized in *Grace United Methodist*.

Thus, the City's decision was part of a system that was designed to make case-by-case determinations. This satisfies the individualized exemption exception.[3]

By meeting the individualized exemption exception, the City's decision is subject to strict scrutiny, meaning "the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest." *Axson-Flynn*, 356 F.3d at 1294

_____

[3] The parties also address whether a "hybrid rights" analysis would affect the court's analysis. Because the court found that the requirements of the individualized exemption were satisfied, discussion of the "controversial" "hybrid rights" exception is unnecessary. *See Grace United Methodist*, 451 F.3d at 656.

-12-

(quoting *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002)).

A compelling government interest is one "of the highest order" and "paramount." *United States v. Hardman*, 297 F.3d 1116, 1127 (10th Cir. 2002) (quoting *Wis. v. Yoder*, 406 U.S. 205, 215 (1972); *Sherbert v. Verner*, 374 U.S. 398, 406 (1963)).  Defendant has not argued that historic preservation is a compelling government interest.  No court has found historic preservation to be a compelling government interest.  *Keeler v. Mayor & City Council of Cumberland*, 940 F. Supp. 879, 886 (D. Md. 1996) (noting that "courts and commentators are apparently unanimous in opining that [historic preservation] is not [a compelling government interest]" and listing cases and articles).  Without a compelling government interest, the court finds that defendant's refusal to grant a demolition permit violates plaintiff's rights under the Free Exercise Clause of the First Amendment.

This holding does not imply that the Kansas Historic Preservation Act is unconstitutional.  It simply states that Kansas may not apply the act in a manner that burdens a party's religious beliefs.  This follows the Supreme Court's lead in *Sherbert*, the "classic example" of individualized exemptions resulting in a violation of the Free Exercise Clause.  *Grace United Methodist*, 451 F.3d at 650; *Sherbert*, 374 U.S. at 410 ("[N]othing we say today constrains the States to adopt any particular form or scheme of unemployment compensation.  Our holding today is only that South Carolina may not constitutionally apply the eligibility provisions so as to constrain a worker to abandon his religious convictions . . . .").

Because defendant's actions violated plaintiff's First Amendment rights, the court grants plaintiff's request for summary judgment on Count III in part as to liability.  In the complaint, plaintiff requested several forms of judgment, but did not clarify its damages under Count III in its present motion.  Accordingly, summary judgment is denied as to damages.  Defendant's request for judgment is denied.

**V.     Count IV—42 U.S.C. § 1983 related to the Fifth and Fourteenth Amendment**s

Plaintiff also alleges that defendant violated § 1983 by depriving it of rights protected by the Fifth and Fourteenth Amendments.  Plaintiff claims that by denying the destruction permit, defendant restricted its use of the property without just compensation.  Defendant responds that plaintiff's claim is not ripe for adjudication, and even if it were, defendant's actions were not a regulatory taking.

**A.     The Ripeness of Plaintiff's Takings Claim**

The Takings Clause of the Fifth Amendment states: "[N]or shall private property be taken for public use, without just compensation."[4]  Accordingly, a violation of the Takings Clause requires a taking and denial of just compensation.  *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 718 (10th Cir. 2004); *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1575–76 (10th Cir. 1995).  This applies to the states through incorporation under the Fourteenth Amendment. *Id.* (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 241 (1897)).  Thus, if a state provides procedures for seeking just compensation, a takings claim is not ripe until such procedures have been completed.  *Clajon Prod. Corp.*, 70 F.3d at 1576.

Kansas has procedures to provide compensation for takings claims.  First, Kansas courts

---

[4] Plaintiff's prayer for Count IV is unclear regarding remedies.  To the extent that plaintiff seeks injunctive relief by requesting that the court find that Kan. Stat. Ann. § 75-2724 is unconstitutional and that defendant's actions are *ultra vires*, such remedies are not available under a takings claim.

> Injunctive relief is not available under the Fifth Amendment absent an allegation the purported taking is unauthorized by law . . . "Unauthorized" conduct . . . equates to action explicitly prohibited or outside the normal scope of agency responsibilities. An agency may act within its authority even if its action is later determined to be legally erroneous.

*Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1042 (10th Cir. 2001).  As discussed, defendant's actions were within its responsibilities and its authority.

recognize inverse condemnation actions for compensation when a government entity takes private property. *Kau Kau Take Home No. 1 v. City of Wichita*, 135 P.3d 1221, 1222 (Kan. 2006). "To establish a claim for inverse condemnation, a party must establish an interest in the real property and a taking." *Id.* (citing *Deisher v. Kan. Dep't of Transp.*, 958 P.2d 656 (Kan. 1998)). When evaluating an inverse condemnation action, whether there has been a taking is a question of law. *Eberth v. Carlson*, 971 P.2d 1182, 1186 (Kan. 1999) (citations omitted).

Kansas law is unclear whether the present situation could be characterized as a taking to establish an inverse condemnation action. This district has recognized that "[t]he Kansas Supreme Court has . . . hinted that a taking may exist if the government were to take affirmative action to restrict and take away a right to the use of property which already existed." *Rau v. City of Garden Plain*, 76 F. Supp. 2d 1173, 1176 (D. Kan. 1999). Conversely, the Kansas Court of Appeals has indicated reluctance to find a taking under Kan. Stat. Ann. § 75-2724. *Allen Realty, Inc.*, 790 P.2d at 953.

> The language of K.S.A. 75-2724 indicates that the legislature took pains to preclude a taking of property by its implementation. The restriction of the statute is by its own terms effective only *until* a landowner can demonstrate that there is no feasible and prudent alternative to the restrained use. A taking cannot be established by showing that a historic preservation statute prevents a landowner from making a particular use of property that would be more beneficial or profitable than its current use.

*Id.* (emphasis in original). *But see First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 321 (1987) (holding that "where the government's activities have already worked a taking of all use of property no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective"). Because Kansas courts likely would not recognize a taking in this context, plaintiff would not have an inverse condemnation action in Kansas.

-15-

Second, the Kansas Historic Preservation Act provides that any person aggrieved by a determination by a governing body may appeal under Kan. Stat. Ann. § 60-2101.  Kan. Stat. Ann. § 75-2724(b).  Under § 60-2101, the decision of the governing body may be "reversed, vacated, or modified," but a district court's award of damages may be inappropriate if the governing body did not initially award damages.  *See Davenport Pasture, LP v. Morris County Bd. of County Commr's*, 62 P.3d 699, 705–06 (Kan. Ct. App. 2003) ("Once it determined that the Board's decision denying compensation must be reversed, the district court should have remanded to the Board for further proceedings designed to set the amount.").  Because § 60-2101 would not allow a reviewing court to grant damages or compensation, the Kansas Historic Preservation Act does not provide a compensation procedure.

Third, the Kansas Historic Preservation Act also restricts the ability to exercise the power of eminent domain.  Kan. Stat. Ann. § 75-2714(b).  Consequently, any compensation procedures available under the Kansas Eminent Domain Procedure Act, Kan. Stat. Ann. § 26-513, would also be unavailable.  Because it is unlikely that plaintiff has an inverse condemnation procedure available, the court considers plaintiff's takings claim ripe.  *See Clajon*, 70 F.3d at 1575.  *But see Rau*, 76 F. Supp. 2d at 1176 ("Because the State of Kansas has provided procedures for obtaining either relief from the zoning regulations or for compensation, plaintiffs have not yet suffered a violation of their Fifth Amendment right . . . plaintiffs may have an action in inverse condemnation.").

**B.      Plaintiff's Regulatory Takings Claim**

Because plaintiff does not allege a physical occupation, its claim is a regulatory taking. *Clajon,* 70 F.3d at 1576.  In *Lingle v. Chevron U.S.A. Inc.*, the Supreme Court clarified that a plaintiff may properly state a regulatory taking by:  alleging a "physical taking, a *Lucas*-type 'total regulatory taking,' a *Penn Central* taking, or a land-use exaction violating the standards set forth in *Nolan* and

-16-

*Dolan*." 544 U.S. 548 (2005). The two relevant formulations are the "total regulatory taking" and the *Penn Central* taking.

The Tenth Circuit has examined whether a government action is a "total regulatory taking" by applying the "economically beneficial use test." *Clajon*, 70 F.3d at 1577. When applying the economically beneficial use test, a court must consider whether all economically beneficial use is prohibited for the entire parcel. *Id.* (citing *Penn Cent. Transp. Co. v. N.Y. City*, 438 U.S. 104, 130 (1978), for the statement: "'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated"). If a beneficial use of the "parcel as a whole" remains, there is no taking under the economically beneficial use test. *Clajon*, 70 F.3d at 1577.

Plaintiff has not alleged that defendant prohibited all economically beneficial use of its property. Instead, plaintiff only alleges that defendant "has rendered the Administration Building economically useless." However, plaintiff also recognizes that the Administration Building is part of the larger property. The Administration Building is in the center of the campus. In fact, separating the Administration Building from adjoining structures, St. Cecilia and Feeney Library, would require "small hand tools." Plaintiff intends to preserve these structures. As a result, plaintiff maintains some economically beneficial use in the parcel as a whole.

Under a *Penn Central* taking, the court considers several factors to examine the severity of the government burden on private property rights. *Lingle*, 544 U.S. at 539. These factors include: "the economic impact of the regulation[;] its interference with reasonable investment backed expectations[;] and the character of the governmental action." *Pittsburg County Rural Water Dist. No. 7*, 358 F.3d at 718. As before, the analysis must focus on the "parcel as a whole," not discrete segments. *Penn Central*, 438 U.S. at 130. It is insufficient to establish a taking "by showing that

[plaintiff has] been denied the ability to exploit a property interest that [it] heretofore had believed was available for development." *Id.*

*Penn Central* recognized that historic preservation laws are an appropriate government power and the character of their implementation—which necessarily "has a more severe impact on some landowners than on others"—does not imply a taking. *Id.* at 133. Thus, the relevant factors here are the economic impact of the regulation and its interference with expectations. Similar to *Penn Central*, defendant's actions do not interfere with the present use of the Administration Building. *See id.* at 136. For sixteen years, plaintiff has searched for a use for the Administration Building. The building's current dormancy is not a product of defendant's actions. Defendant's only relevant action was denying the demolition permit. That plaintiff has assumed, incorrectly, that it had the property right to demolish the building for the last sixteen years, does not create a taking. *See Penn Central*, 438 U.S. at 130 (rejecting the notion that a taking may be established "by showing that [plaintiff has] been denied the ability to exploit a property interest that [it] heretofore had believed was available for development"). Similarly, plaintiff has not indicated that any investment backed expectations were eliminated by defendant's denial of the demolition permit. Additionally, plaintiff has not demonstrated the economic impact of defendant's action on the parcel as a whole.

Plaintiff's efforts to distinguish *Penn Central* and rely on *Keeler* are unpersuasive. Plaintiff attempts to distinguish *Penn Central* by noting that the Administration Building is not economically viable and that plaintiff, unlike the commercial plaintiff in *Penn Central*, is "not seeking to obtain a reasonable monetary return on their investment." First, *Penn Central* requires an assessment of the parcel as a whole, and not solely the Administration Building. Second, while plaintiff's religious distinction is important, *Penn Central*'s "reasonable return" analysis is part of an examination of whether the regulation at issue interfered with the present uses of the building and the party's "primary

-18-

expectation concerning the use of the parcel." *Penn Central*, 438 U.S. at 136.  Defendant's actions have not interfered with the present use of the Administration Building.  Although plaintiff alleges that "'a boarded-up building would have a great detrimental effect on recruiting new members'" and "'a mothballed building would say that the Community was standing still,'" the Administration Building became underutilized and dormant before defendant denied the demolition permit.  It is, therefore, inaccurate to portray the present regulation as interfering with plaintiff's primary expectations for its community.  On the other hand, the facts of *Keeler* are distinguishable from the present situation.  In *Keeler*, the defendant stipulated that "no economically feasible plan can be formulated" for the preservation of the Church buildings.  *Keeler*, 940 F. Supp. at 888.  Here, defendant found a feasible and prudent alternative for the Administration Building.

Plaintiff failed to show that it suffered a regulatory taking, either under *Lucas* or *Penn Central*.  Without a taking, plaintiff's constitutional rights under the Fifth and Fourteenth Amendments were not violated.  Plaintiff's § 1983 claim based on these rights also fails.  Defendant's request for judgment is granted; plaintiff's request for judgment is denied.

## VI.    Count V—Mandamus

Plaintiff's "Count V" requests an order of mandamus requiring the city to issue the requested demolition permit.  Defendant answers that mandamus is not an appropriate remedy in this context because its decision was discretionary and not ministerial.

Mandamus is a writ to compel government officers to perform nondiscretionary duties. *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005) (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 168–69 (1803)).  For a duty to be nondiscretionary it must be "ministerial, clearly defined, and peremptory."  *Simmat*, 413 F.3d at 1235.  If a government duty, however, provides for some discretion, mandamus may be appropriate to confine the duty to within the

-19-

discretional limits.  *Id.*  As discussed, defendant's decision was necessarily on a case-by-case basis.

Consequently, defendant's decision was not ministerial.

Plaintiff attempts to circumvent the ministerial requirement with holdings from the Kansas

Supreme Court.  Under Kansas law, mandamus is unavailable to compel a public official to perform a

discretionary act, but may be appropriate "where the essential purpose of the proceeding is to obtain

an authoritative interpretation of the law for the guidance of public officials in their administration of

the public business."  *Schmidtlien Elec., Inc. v. Greathouse*, 104 P.3d 378, 393 (Kan. 2005); *State ex*

*rel. Stephan v. Parrish*, 891 P.2d 445, 448 (Kan. 1995).  Additionally, Kansas law provides that

"where a public official's action or refusal to act is based upon a statute whose validity is challenged,

mandamus may lie in appropriate cases."  *Stephens v. Van Arsdale*, 608 P.2d 972, 978 (Kan. 1980).  In

considering whether the broader application of mandamus is appropriate, the Kansas Supreme Court

considers whether the issues are of "significant statewide concern of a recurring and ongoing nature,"

and whether there is a danger of inconsistent rulings from district courts.  *Id.* at 979; *State ex rel.*

*Stephan*, 891 P.2d at 448.

Under Kansas law, mandamus remains inappropriate.  This case does not meet the criteria for

the broader application of mandamus.  Although plaintiff states that it is seeking an authoritative

interpretation of Kan. Stat. Ann. § 75-2724, plaintiff has not demonstrated that the present issues are a

repetitive and significant statewide concern.  Plaintiff does not discuss the number of religious sites

affected by the Kansas Historical Preservation Act, and of those sites, the number that have or will

request construction permits, and of those requested permits, the number that have been or will be

denied.  While this case is important to many persons and presents significant constitutional questions,

nothing indicates that similar situations are being repeated throughout Kansas.  Therefore, mandamus

is not an appropriate remedy.  Defendant's request for judgment is granted; plaintiff's request for

judgment is denied.

## VII.   Count II—Declaratory Judgment related to § 7 of the Kansas Constitution Bill of Rights

Plaintiff also requests a declaratory judgment that the Kansas Historic Preservation Act and defendant's actions are unconstitutional because they violate "§ 7 of the Constitution of the State of Kansas Bill of Rights."  Because of the prior analysis of the United States Constitution, such state constitution analysis is presently unnecessary.  *See Grogan v. Graves*, No. 90-2378, 1990 WL 182377, at *4 (D. Kan. Oct. 30, 1990) ( "In light of the fact that the statutes are violative of the United States Constitution, the court finds it unnecessary to determine whether . . . the statutes are also violative of the Kansas Constitution"); *Lower v. Bd. of Dirs. of Haskell County Cemetery Dist.*, 56 P.3d 235, 244–45 (Kan. 2002) (analyzing a § 1983 First Amendment Claim and a claim under § 7 of the Kansas Constitution Bill of Rights under the *Employment Div., Dep't of Human Res. v. Smith* framework without providing any other analysis for the § 7 claim); *Carter v. Builders Transp., Inc.*, 812 F. Supp. 97 (W.D. Ky. 1992) (citing *Louisville & Nashville R.R. Co. v. Garrett*, 231 U.S. 298, 305 (1913) for the statement "federal courts hesitant to find a state statute contrary to state constitution when state court has not so ruled").  In light of the other present rulings, the court will hold a status conference regarding this claim.

## VIII.   The Religious Land Use and Institutionalized Persons Act

Similarly, plaintiff informally requests this court consider an additional claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*  Defendant opposes this informal request.  Because plaintiff's request does not conform to Local Rule 15.1, the court does not presently consider any additional claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 8) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Plaintiff's Cross Motion for Summary Judgment (Doc. 10) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the court will hold a status conference regarding the remaining issues.

Dated this  12th  day of March 2007, at Kansas City, Kansas.

 s/ Carlos Murguia                                 
**CARLOS MURGUIA**
**United States District Judge**